## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL FENTON, *et al.*, individually and on behalf of others similarly situated, | Civil No. 07-4864 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| FARMERS INSURANCE EXCHANGE, | |
| Defendant. | |

Matthew H. Morgan, Donald H. Nichols, and Paul J. Lukas, **NICHOLS KASTER & ANDERSON, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402-2242, for plaintiff.

George E. Preonas and Andrew M. Paley, **SEYFARTH SHAW LLP**, 2029 Century Park East, Suite 3300, Los Angeles, CA 90067; Jonathan P. Norrie and Frederick E. Finch, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, for defendants.

Farmers Insurance Exchange ("FIE") is an inter-insurance exchange, or reciprocal, organized in California. FIE employs special investigators who investigate potentially fraudulent insurance claims. Special investigator Michael Fenton alleges that he and other FIE special investigators routinely work more than forty hours per week, but are improperly classified as "exempt" from overtime pay under the Fair Labor Standards Act ("FLSA"). Fenton and twenty other named plaintiffs bring this collective action challenging this practice on behalf of themselves and all other similarly situated special investigators. *See* 29 U.S.C. § 216(b). In addition, twenty named plaintiffs bring claims

under California state labor laws seeking further relief. Both plaintiffs and FIE now move for summary judgment. For the reasons given below, both motions are granted in part, denied in part, and deferred in part.

## BACKGROUND

FIE is a reciprocal or inter-insurance exchange that sells insurance policies throughout the county. As a reciprocal exchange company, FIE is owned by its policyholders, or "subscribers," who exchange contracts with one another and, by pooling their resources, insure one another against certain losses. FIE, whether on its own or through its related companies, performs all the functions of a typical insurance company, including selling policies, contracting with individual agents who sell and service policies, procuring reinsurance, and adjusting claims.

FIE's special investigators – the plaintiffs in this action – investigate the factual basis for subscribers' insurance claims, to determine whether the claims should be paid. The claim investigation process and the job duties of the investigators are critical to this action, and are described in detail below.

The claims investigations process begins with FIE's claims representatives, who work out of a different business unit than the investigators, and flag claims that exhibit potential signs of fraud. (Morgan Aff., Docket No. 94, at 127-28.) The claims representatives then use a shared electronic database to refer the flagged claims to an FIE unit staffed by the plaintiffs. (*Id.* at 105.) Managers in this unit then assign the claims to specific investigators. (*Id.* at 107.)

After an investigator receives an assignment, he or she is required to promptly contact the claims representative who referred the claim. (*Id.* at 115-16.) The investigator is required to consider the specific issues flagged by the claims representative, and attempt to develop a plan to investigate those issues. (*Id.*; Morgan Aff., Docket No. 94, Ex. F, at 74.) While investigators may occasionally suggest an additional fraud indicator to pursue, they do not reshape the scope of an investigation without first getting the approval of the claims representative or their supervisor. (Morgan Aff., Docket No. 116, Ex. 7, at 44 ("It's [the claims representative's] file."); *id.* Ex. 2, at 38 (indicating that investigation plans are "always" sent to supervisors for approval).) In addition, while investigators may recommend that a claim does not require the work of an investigator, the final decision about whether to close an investigation is made by supervisors or claims representatives. (Ashbridge Decl., Docket No. 41, ¶ 18.)

Plaintiffs' investigations often involve taking photographs of relevant materials; retrieving police or fire reports and other records; and interviewing the claimant and other witnesses. (*Id.* ¶ 19.) Investigators also ensure that FIE complies with California's requirement that suspected insurance fraud be reported to the state. *See* Cal. Ins. Code § 1872.4. While plaintiffs may recommend that FIE use an expert to evaluate an incident, this determination is ultimately made by the claims representative. (Morgan Aff., Docket No. 116, Ex. 2, at 48.) In addition, while plaintiffs encounter new leads on occasion in the course of their investigations, they are not to pursue those leads without permission of the claims representative or a supervisor. (Morgan Aff., Docket No. 94, Ex. F, at 75.)

When an investigator believes that an investigation is complete, he or she contacts the claims representative to determine if the representative would like him or her to investigate further. (Morgan Aff., Docket No. 116, Ex. 12, at 158.) Once the claims representative approves the closing of the investigation, the investigators are required to submit an exhaustive file of their research materials, including "a list of all completed tasks (or an explanation of why a task was not completed), a report of any inconsistencies, discrepancies, and/or significant findings (both inculpating and exculpating); [and] a complete summary of the entire investigation." (Ashbridge Decl., Docket No. 41, ¶ 22.) In addition, although investigators describe coming to credibility determinations after interviews with witnesses or claimants, and occasionally share these impressions in informal conversations with the assigning claims representatives, "the special investigator's subjective opinions or conclusions are excluded from [these] written reports," and investigators do not otherwise draft recommendations about whether a claim should be paid. (*Id.* ¶ 21; Morgan Aff., Docket No. 94, Ex. A, at 146.)

Investigators are required to open new investigations at a rate of 12.5 per month, and must close each investigation within fourteen days. (Morgan Aff., Docket No. 94, Ex. 11, at 46.) These investigations are their primary job duty. (Ashbridge Decl., Docket No. 41, ¶ 6.) Investigators are also required to randomly review claim files to look for fraud indicators, an activity which accounts for 5% of their overall performance rating, (Morgan Aff., Docket No. 94, Ex. P, at 7), and occasionally conduct training for claims representatives about insurance fraud awareness.

FIE randomly subjects plaintiffs' work product to Quality Assurance ("QA") review. The results of QA reviews constitute 50% of FIE's overall evaluation of an investigator's performance. (*Id*.) The guidelines for performing a QA review are nine pages long, and include dozens of specific criteria that are used to evaluate an investigation's quality. (Moran Aff., Docket No. 94, Ex. O.) The QA guidelines give specific timelines for investigators' work, state twenty-five separate steps that investigators should consider in the course of their investigations, and state nineteen requirements for investigators' written reports. (*Id*.) The QA guidelines add that the investigators' "purpose is to provide . . . factual information that allows the Claims Professionals . . . to make good decisions, not tell them what decision to make, or provide conjecture on what really happened." (*Id*.)

Plaintiffs filed this action under the FLSA, alleging that they are improperly classified as exempt from the FLSA's overtime requirements. Plaintiffs seek liquidated damages and contend that the statute of limitations for their claims should be extended to three years because FIE's violations were willful. Plaintiffs also allege claims under California state law, which are dealt with individually below. Plaintiffs now move for partial summary judgment, asking the Court to conclude (1) that they are not exempt from the FLSA's overtime requirements, (2) that they are entitled to liquidated damages, (3) that FIE's violations were willful, and (4) that the Court should not calculate damages using the "fluctuating workweek" method. FIE moves for summary judgment on all of plaintiffs' claims.

**ANALYSIS**

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    EXEMPTION UNDER THE FLSA

29 U.S.C. § 207(a)(1) requires qualifying employers to pay employees time and a half for work in excess of forty hours per week.  The statute includes several exemptions, however, including one applicable to workers "employed in a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  In disputes over whether any exception applies, it is the employer's burden to prove that employees are exempt.  *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1000 (8th Cir. 2003).  In addition, "FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit."  *Webster v. Public Sch. Employees of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001).  The

kind of work that employees perform is a question of fact, but whether uncontested work activities exclude an employee from FLSA overtime benefits is a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

The FLSA delegates authority to define the scope of its exemptions to the Secretary of Labor ("Secretary"). 29 U.S.C. § 213(a)(1). In accordance with that authority, the Secretary has established the "short duties test," which is used to determine whether an employee earning more than $455 per week qualifies for the administrative exemption. To qualify as exempt, an employee's primary duty must (1) consist of the performance of office or non-manual work "directly related to the management or general business operations of the employer or the employer's customers"; and (2) include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The Secretary further explains:

> The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a). In addition,

> the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

The Secretary adds that whether an employee exercises sufficient discretion and independent judgment depends on factors such as "whether the employee has authority to waive or deviate from established policies and procedures without prior approval [and] whether the employee has authority to negotiate and bind the company on significant matters." 29 C.F.R. § 541.202(b). In other words, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

The regulations go on to explain how these provisions apply to several specific jobs. For example, insurance claims adjusters generally are exempt where:

> their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. 541.203(a). In accordance with this standard, the Ninth Circuit has determined that FIE's claims representatives – the employees to whom plaintiffs deliver their investigation results – are exempt. *See In re Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2007). The Secretary clarifies, however, that "ordinary inspection work," involving well-established techniques and procedures . . . catalogued and described in manuals or other sources" are not exempt. 29 C.F.R. § 541.203(g). Similarly, the Secretary has specifically indicated that investigators working in law enforcement are not exempt where they "perform work such as . . . conducting investigations or inspections for

violations of law; performing surveillance . . . interviewing witnesses . . . preparing investigative reports; or other similar work." 29 C.F.R. § 541.3(b)(1).

In arguing that plaintiffs are exempt from the FLSA's overtime requirements, FIE relies heavily on the legal treatment of claims adjustors, both in the regulation quoted above, and in case law. *See, e.g.*, *McAllister*, 325 F.3d at 999-1002 (finding an insurance claim "coordinator" exempt from the FLSA's overtime requirements). Plaintiffs respond that their responsibilities are closer to those of mere investigators or inspectors, who are generally not exempt. In addition to the regulations quoted above, plaintiffs also point to an Opinion Letter issued by the Department of Labor, addressing employees who perform background investigations on federal employees seeking security clearances. *See* Opinion Letter Fair Labor Standards Act, 2005 WL 3308592 (Dep't of Labor Aug. 19, 2005); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (indicating that the Secretary's interpretations of her own regulations are controlling unless they are plainly erroneous or inconsistent with the regulations). The Secretary confirmed that these investigators are not exempt from the FLSA's overtime requirements, after noting a list of job responsibilities that are at least as significant as those at issue here. 2005 WL 3308592. Those responsibilities included (1) gathering and checking public records; (2) interviewing witnesses; (3) making decisions about whether to report security threats to the Defense Security Service ("DSS"); (4) determining what leads to follow; (5) resolving discrepancies in information with limited guidance; (6) stating whether a witness is credible; and (7) providing factual information to DSS so it can make a final

determination about whether an individual should receive a security clearance.  *Id.*  The

DOL explained:

> [P]lanning one's own workload, such as prioritizing the pursuit of
> particular leads, assessing whether the leads provided are in the
> Investigator's area of responsibility, or have provided information that
> requires further investigation, determining which potential witnesses to see
> and which documents to review, and making similar decisions that promote
> effective and efficient use of that individual's own work time in performing
> assigned investigative activities, do <u>not</u> constitute exercising discretion and
> independent judgment with respect to matters of significance.

2005 WL 3308592 (internal quotation marks omitted; emphasis original).

Plaintiffs also note that at least one federal case has dealt specifically with the

classification of employees hired to investigate insurance claims.  In *Gusdonovich v.*

*Business Information Co.*, the court considered the status of employees whose primary

responsibilities were "the search of public records, the serving of subpoenas and orders,

surveillance, [and] the interrogation of witnesses."  705 F. Supp. 262, 263 (W.D. Pa.

1985).  The investigators' work was subject to review by supervisors, who assessed

whether the scope of their investigations stayed within appropriate parameters.  *Id.* at

264.  The court determined that in those circumstances, the employees did not exercise

sufficient discretion and independent judgment to satisfy the short duties test.  The court

explained that in light of the extensive oversight over the investigators, their fact-

gathering merely involved "applying their knowledge and skill in determining what

procedure to follow," as opposed to any bona fide exercise of discretion and independent

judgment.  *Id.* at 265.

The Court agrees that plaintiffs' job duties and FIE's constraints on their discretion are sufficiently aligned with the employment circumstances of (1) the insurance investigators discussed in *Gusdonovich*, and (2) the employees performing background investigations and police investigations addressed by the Secretary, for plaintiffs to be non-exempt from the FLSA's overtime requirements as a matter of law. Specifically, the Court concludes that the record demonstrates as a matter of law that plaintiffs do not "exercise . . . discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

In reaching this conclusion, the Court begins with FIE's extensive QA review guidelines, which explain in great detail how plaintiffs should approach dozens of issues that typically arise in the performance and documentation of investigations.[1] (*See* Morgan Aff., Docket No. 94, Ex. O.) Even though this document formally functions as guidance for how to evaluate investigators, rather than as guidance for how to perform investigations, deposition testimony demonstrates that investigators are well aware of it. (*See, e.g.*, Morgan Aff., Docket No. 94, Ex. H, at 92 (noting that one employee creates his own checklists to match the QA guidelines).) In light of the fact that QA reviews constitute 50% of an employee's overall performance assessment, it is unsurprising that their detailed criteria attract investigators' fixed attention, and it is clear that they are

---

[1] For example, these guidelines state "[a]ll photos, regardless of when taken or who took them, must be reviewed to see if additional photos are needed for investigative purposes. If current photos are sufficient, then a summary of the [investigator's] observations must be documented. If they are not sufficient, then additional photos are to be obtained as needed and attached to the file." (Morgan Aff., Docket No. 94, Ex. O.) Similarly, "[t]here must be documentation of any witness contact information (name, address, phone number, etc.) when one is identified in the investigation. There must also be an attempt to contact any witness identified, or an explanation as to why it was not necessary." (*Id.*)

relevant to this Court's application of the short duties test. (*See, e.g.*, Morgan Aff., Docket No. 94, Ex. H, at 92 (noting that one employee creates his own checklists to match the QA guidelines)); *see also Gusdonovich*, 705 F. Supp. at 265 (treating after-the-fact review as relevant to the scope of an employee's discretion).

To be clear, FIE is correct that the mere fact that plaintiffs effectively operate in the shadow of an employment manual is not enough, on its own, to demonstrate that they are not exempt. *See, e.g.*, *McAllister*, 325 F.3d at 1001 ("Just because McAllister was required to follow detailed manuals does not mean she did not exercise discretion and independent judgment."); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) ("[T]he requirement that Allstate adjusters must consult with manuals or guidelines does not preclude their exercise of discretion and independent judgment."). Indeed, it is not difficult to conceive of circumstances where even extensive guidance could nonetheless leave employees with considerable discretion on matters of significance. *See McAllister*, 325 F.3d at 1001. Here, however, the Court finds nothing in the residual discretion available to investigators that is sufficient to justify exemption. Most significantly, FIE concedes that the investigators' subjective opinions and conclusions are excluded from their written reports. (Ashbridge Decl., Docket No. 41, ¶ 21.) This is squarely confirmed in a passage from the QA review quoted above, which flatly states that the investigators' "purpose is to provide . . . factual information that allows the Claims Professionals . . . to make good decisions, not tell them what decision to make, or provide conjecture on what really happened." (Morgan Aff., Docket No. 94, Ex. O.) The guidelines add that "[a]ll inculpating and exculpating information must be reported in equal detail and emphasis,"

and "[o]pinions and/or speculative 'what if' scenarios are not acceptable." (*Id.*) While employees do not necessarily need to make final decisions in order to be exempt, *see* 29 C.F.R. § 541.202(c), this explanation of the investigator's responsibilities – in conjunction with the requirement that investigators provide the claims representatives with any and all documents that they gathered during their investigation (*id.* ("All reports must be attached to the file, even if the result was no information available.")) – sufficiently demonstrates that their primary role is simply to gather facts and present them for someone else to analyze. They have no authority to determine whether a claim is covered or whether FIE should seek to negotiate a settlement, and – while their thoughts on these types of higher-level decisions may come up in informal conversation – any minor role they play in such discussions is plainly not among their "primary" duties. *Cf. McAllister*, 325 F.3d at 1001 (finding claims adjusters exempt despite their compliance with manuals where they had authority to settle claims of up to $250,000); *Cheatham*, 465 F.3d at 586 (finding insurance employees exempt despite their compliance with manuals and guidelines where they had discretion to determine liability and negotiate settlements). In short, as in *Gusdonovich* and the Secretary's analysis of government background investigators, it is clear that plaintiffs are limited to "applying well-established techniques" in developing an evidentiary record for claims representatives, and do not exercise sufficient discretion and independent judgment to meet the short duties test. 29 C.F.R. § 541.202(e).

As to the Secretary's assessment of claims adjustors, which is relied on heavily by FIE, the Court simply adds that although an employee need not perform all of the duties

of claims adjusters listed by the Secretary in order to qualify as exempt, *see In re Farmers*, 481 F.3d at 1129, that list includes a variety of significant, discretion-laden activities that are undisputedly not present here, such as "negotiating settlements" and "making recommendations regarding litigation." 29 C.F.R. § 541.203(a). In short, while the Ninth Circuit was correct to apply this regulation to FIE's claims representatives, this Court finds nothing in federal law that would justify extending it to the employees who merely gather facts for those representatives, particularly when those employees are formally barred from presenting their opinions about how to handle claims in their written reports. Accordingly, as to the question of whether plaintiffs are exempt from the FLSA's overtime requirements, plaintiffs' motion is granted, and FIE's motion is denied.

## III.    WILLFULNESS OF FLSA VIOLATIONS

FLSA violations normally have a two-year statute of limitations, but if the violations are willful, the statute of limitations is extended to three years. 29 U.S.C. § 255(a). The Supreme Court has defined a willful violation of the FLSA as one where the employer acts with "knowing or reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Supreme Court further explained that this standard requires more than mere negligence, and more than a mere failure to seek legal advice about a potentially difficult classification decision. *Id*. at 134-35. The burden of establishing willfulness rests on employees. *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003).

Here, plaintiffs argue that FIE's violations should be categorized as willful because FIE failed to identify the employee responsible for its original classification decision, and failed to produce any documents demonstrating how it decided that investigators should be compensated. In other words, plaintiffs offer no evidence that affirmatively proves that FIE's violations were willful, but argues that this Court should nonetheless infer that such evidence exists because FIE has not demonstrated otherwise. Put yet another way, plaintiffs ask this Court to reassign the burden of proof. The Court finds no legal basis for this reworking of the law, and agrees with FIE that plaintiffs' willfulness claim must be dismissed. If plaintiffs did not receive relevant evidence, the proper course would have been to bring a motion to compel. In the absence of such a motion, and in the absence of anything else that rises above speculation about FIE's motives, the Court concludes that plaintiffs have failed to meet the weighty burden for proving willfulness, and that their request to extend the statute of limitations to three years must be dismissed. Accordingly, as to the question of willfulness, FIE's motion is granted, and plaintiffs' motion is denied.

## IV.    LIQUIDATED DAMAGES

An employer who violates the overtime provisions of the FLSA is ordinarily liable for both the unpaid overtime compensation and an equal amount as liquidated damages. 29 U.S.C. § 216(b). Liquidated damages are not punitive, but rather account for the fact that actual damages, such as costs to the employee arising from the delay in receiving wages, may be difficult to calculate and prove. *Hultgren v. County of Lancaster*, 913

F.2d 498, 509 (8th Cir. 1990). While liquidated damages are the norm, there is a limited, statutory exception for employers who acted in good faith with "reasonable grounds for believing" that they complied with the FLSA. 29 U.S.C. § 260. To demonstrate good faith, employers must show an honest effort to discover and follow the FLSA's requirements. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008).

Here, the difference in the burden of proof that distinguishes this claim from plaintiffs' willfulness claim is critical. On this issue, as opposed to the issue of willfulness, FIE has the burden of demonstrating how it came to its classification decision. *See Barbeque Ventures*, 547 F.3d at 942 ("To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions.") (internal quotation marks omitted). FIE has made no meaningful attempt to do so.[2] In those circumstances, the Court cannot conclude that FIE has met the difficult burden of showing that this is the exceptional case where liquidated damages are inappropriate. Accordingly, as to the question of liquidated damages, FIE's motion is denied, and plaintiffs' motion is granted.

---

[2] FIE briefly contends that it should not be required to pay liquidated damages because the Ninth Circuit's determination that FIE's claims adjusters are exempt could reasonably have been read to cover the plaintiff investigators. As explained above, however, there are significant differences between these categories of employees. These differences would have been readily apparent to an employer who crafted the relevant job descriptions, and should have signaled that something beyond the Ninth Circuit case was necessary to assure FIE that the investigators were exempt. In any event, FIE offers no evidence that this is actually how FIE came to its determination. A mere hypothetical, after-the-fact suggestion that a particular case could have theoretically served as guidance is not the type of evidence of affirmative efforts to comply with the FLSA that is necessary to escape liquidated damages. *See Barbeque Ventures*, 547 F.3d at 942.

## V.    CALCULATING OVERTIME PAY

The parties also seek a ruling as to the appropriate method for calculating plaintiffs' damages.  As noted above, the FLSA requires employers to pay 150% of an employee's "regular rate" for each hour of overtime.  29 U.S.C. § 207(a)(1).  This statute does not explain, however, how to calculate overtime for employees who are paid a fixed salary to work hours that vary week by week.  The Secretary provides guidance on this issue at 29 C.F.R. § 778.114.

Under that regulation, where "there is a clear mutual understanding of the parties that [an employee's] fixed salary is compensation . . . for the hours worked each workweek, whatever their number," and where this salary arrangement is sufficient to ensure that the employee is being paid at least minimum wage for every workweek, the Secretary provides specific instructions for how to calculate overtime.  *Id.*  The Secretary explains that the "regular rate" of pay for such employees is first separately determined for each individual workweek.  That figure is reached by dividing the actual number of hours that the employee worked in a particular week into that week's fixed salary.  29 C.F.R. § 778.114(b).  The overtime wages for that week is then determined by taking all of the hours that the employee worked that week beyond forty, and multiplying that number by one-half of that week's "regular rate."  This typically results in less overtime compensation than if the employee was treated as if she were simply paid by the hour, a result that the Secretary suggests is justified because salaried employees' have already been partially compensated for their additional hours through their salary.  § 778.114(a).

Here, the parties agree that plaintiffs were paid a fixed salary to work a variable schedule, and there is nothing in the record that credibly suggests any other understanding of their compensation. In those circumstances, the Court concludes that plaintiffs' had a "clear understanding" of the fixed nature of their compensation, and that the method of calculating overtime explained in § 778.114 applies. *See Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008) (concluding that § 778.114 merely requires that the parties had clear understanding that employees would be paid a fixed salary for all hours worked, even if the employer improperly neglected to explain their right to overtime); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988). Accordingly, as to the method of calculating plaintiffs' overtime, plaintiffs' motion is denied.

## VI.    CALIFORNIA STATE LAW CLAIMS

### A.    Overtime Exemption

Plaintiffs bring additional claims under California state law. FIE seeks a ruling as to whether they should be classified as exempt from California's overtime pay requirements. California's requirements draw the category for exemption at least as narrowly as the FLSA, *see Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933, 949 (C.D. Cal. 2008), and in light of this Court's conclusion outlined above, the Court concludes that plaintiffs are non-exempt under California law as well. Accordingly, FIE's motion is denied as to the question of whether plaintiffs are exempt from California's overtime requirements.

**B.      Waiting Time for Wages at Termination**

Under California law, if an employer "willfully" fails to pay an employee all of the wages the employee is owed when the employee quits or is fired, the employer is required to continue paying the employee's wages at the same rate for thirty days, as a penalty.  Cal. Labor Code § 203.  However, if it is unclear whether the employee is legally entitled to the wages, and the employer is contesting that entitlement with a good faith belief in its position, the penalty does not apply.  *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8 (1981).  The burden of proving a violation of section 203 is on the plaintiff.  *See Wong v. Pape Machinery, Inc.*, No. S-08-0042, 2009 WL 937481, at *11 (E.D. Cal. Apr. 7, 2009).

Here, as noted above, plaintiffs have not brought forward evidence demonstrating that FIE was aware that it was violating the FLSA, or that FIE acted other than in good faith.  While plaintiffs contend that this failure of proof is a result of FIE failing to hand over evidence, plaintiffs never sought to compel the production of that evidence.  Thus, the Court agrees that this claim must be dismissed.  Accordingly, FIE's motion for summary judgment is granted to the extent that it seeks judgment on plaintiffs' claim for unpaid wages at termination.

**C.      Paycheck Stub Claim**

California law also requires that employers provide their employees with pay stubs that include, among other things, the number of hours worked by an employee entitled to overtime compensation.  Cal. Labor Code § 226.  Employers who "knowing[ly] and

intentional[ly]" fail to comply with this requirement may be liable for damages or statutory penalties. § 226(e). Plaintiffs contend that this statute was violated in this case, because their pay stubs failed to include their overtime hours. FIE's only argument that this claim should be dismissed as to all of the plaintiffs is that plaintiffs were exempt from any overtime pay requirements. The Court has rejected that argument for the reasons given above. Accordingly, FIE's motion is denied to the extent that it seeks to dismiss this claim as to all of the plaintiffs.

FIE adds, however, that this claim should be dismissed as to plaintiff Neil Coffman, under the one year statute of limitations for California actions seeking statutory penalties. *See* Cal. Civ. Proc. § 340(a). FIE notes that Coffman was terminated on March 8, 2006, and was not added to this case until February 26, 2008. Plaintiffs do not dispute these contentions, which clearly place Coffman's claim beyond the statute of limitations. Accordingly, FIE's motion is granted to the extent that it seeks the dismissal of Coffman's claim for pay stub penalties under section 226.

### D.      Breaks and Meal Periods

California law also provides for penalties where employers fail to provide employees with adequate meal breaks. Cal. Lab. Code § 226.7. The parties disagree over whether California's current regulations require that an employer ensure that employees take the required breaks, or whether the employer must simply allow it. The California Supreme Court has recently granted certiorari to consider this question. *Brinkley v. Pub. Storage*, 167 Cal. App. 4th 1278 (2008), *rev. granted*, 198 P.3d 1087

(2009). Thus, the Court defers ruling on this state law question until that Court has provided guidance. Accordingly, both parties' motions for summary judgment are deferred to the extent that they seek judgment on this issue. The parties are ordered to submit a joint letter within twenty days of the California Supreme Court's ruling, indicating whether further consideration of this issue is necessary. If no ruling has been handed down by February 1, 2010, the parties are to file a joint letter to the Court noting that fact, and shall contact the Court's Calendar Clerk to schedule a status conference.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 91] is **GRANTED in part, DEFERRED in part,** and **DENIED in part,** as follows:

    a. The motion is **GRANTED** as to plaintiffs' contention that they are not exempt from the overtime requirements of the FLSA and California state law, and as to plaintiffs' claim for liquidated damages.

    b. The motion is **DEFERRED** as to plaintiffs' claim for unpaid breaks.

    c. In all other respects, plaintiffs' motion is **DENIED**.

2. Defendant's Motion for Summary Judgment [Docket No. 102] is **GRANTED in part, DEFERRED in part,** and **DENIED in part** as follows:

    a. The motion is **GRANTED** as to plaintiffs' allegation that defendant's alleged violations were willful; as to plaintiffs' California state law

"waiting period" claim; and as to the California state law pay stub claim of plaintiff Neil Coffman.

        b.      The motion is **DEFERRED** as to plaintiffs' claim for unpaid breaks.

        c.      In all other respects, defendant's motion is **DENIED**.

3.      Within twenty days of the California Supreme Court's ruling in *Brinkley v. Public Storage*, the parties are to file a joint letter indicating whether further proceedings are necessary concerning plaintiffs' claim for unpaid breaks.  If no ruling has been handed down by February 1, 2010, the parties shall file a joint letter to the Court noting that fact, and shall contact the Court's Calendar Clerk to schedule a status conference.

DATED:  September 29, 2009                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                       JOHN R. TUNHEIM
                                   United States District Judge